UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

ARTHUR MONTOUR,
a/k/a/ "SUGAR MONTOUR,"
PETER MONTOUR, KENNETH HILL, and
NATIVE WHOLESALE SUPPLY,

Defendants.

Case No. CR09-214 MJP

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS THE CCTA CHARGES AND COMPEL GRAND JURY INSTRUCTIONS**

This matter comes before the Court on five motions brought by the Defendants: (1) Defendants' motion to strike allegations and/or dismiss select alleged violations of the Contraband Cigarette Trafficking Act ("CCTA") (Counts 7-16) (Dkt. No. 92); (2) Defendants' motion to dismiss the CCTA charges under the void for vagueness doctrine (Dkt. No. 91); (3) Defendants Kenneth Hill's and Peter Montour's motion to dismiss the CCTA charges against them on the theory that they cannot be prosecuted under the statute (Dkt. No. 97); (4) Defendants Kenneth Hill's and Peter Montour's motion to dismiss the aiding and abetting charges against them (Dkt. No. 96); and (5) Defendants' motion to compel disclosure of the prosecutors' instructions to the grand jury regarding the CCTA charges (Dkt. No. 93). Having reviewed the motions, the responses (Dkt. Nos. 107, 110), the replies (Dkt. Nos. 123-26), all papers submitted

in support thereof, and having heard oral argument on March 30, 2010, the Court DENIES all five motions for the reasons set forth below.

At the hearing on March 29, 2010, the Court GRANTED Defendants' motion to dismiss the false declaration charges (Dkt. No. 86) and GRANTED Defendant Peter Montour's motion for continuance (Dkt. No. 141). (See Dkt. No. 163.) On March 31, 2010, the Court entered a minute order noting that Defendants' motion to dismiss the false declaration charges on multiplicity grounds (Dkt. No. 87) and motion to sever the false declaration charges (Dkt. No. 90) were MOOT in light of its oral ruling granting Defendants motion to dismiss the false declaration charges (Dkt. No. 86). (Dkt. No. 170.) At the hearing on March 30, 2010, the Court GRANTED Defendants' motion to sever and continue counts 17-19 (Dkt. No. 149) and DENIED Native Wholesale Supply's motion to compel (Dkt No. 94). (See Dkt. No. 165.) The Court also approved Defendants' withdrawal of their motions to dismiss on preemption grounds (Dkt. Nos. 95, 99). (Dkt. Nos. 169, 175.) The Court rules separately on Defendants' motion to strike the forfeiture allegations (Dkt. No. 98). (Dkt. No. 178.)

## Background

### A. Allegations in the Indictment[1]

Defendants Arthur "Sugar" Montour, Peter Montour, Kenneth Hill, and Native Wholesale Supply ("NWS") are charged with one count of conspiracy to violate the CCTA and fifteen counts of violating the CCTA. (Third Superseding Indict. ("TSI") ¶¶ 1-57.[2]) The CCTA conspiracy count alleges that from the spring of 2003 through February 13, 2008 Defendants conspired to supply and ship contraband cigarettes to a smokeshop near Arlington, Washington, from a Foreign Trade Zone in Nevada. (TSI ¶¶ 13, 17-26.) The smokeshop was operated by

---

[1] The following allegations are taken from the Third Superseding Indictment and are accepted as true solely for the purpose of deciding the pending motions. Nothing should be construed as acceptance of these allegations as proven fact.

[2] The original Indictment was filed on June 25, 2009. (Dkt. No. 1.) The grand jury returned a Superseding Indictment on August 5, 2010. (Dkt. No. 12.) The grand jury returned a Second Superseding Indictment on August

Native American Ventures d/b/a/ Blue Stilly Smoke Shop ("Blue Stilly") which is a retail establishment located on Stillaguamish Tribal Trust Land in Washington. (TSI ¶ 13.)

The flow of cigarettes involves several entities and persons. NWS is incorporated under the laws of the Sac and Fox Tribe of Oklahoma, with its primary office in Perrysburg, New York, on Seneca Nation Territory. (TSI ¶ 5.) NWS is the exclusive importer of Seneca and Opal brand cigarettes manufactured by "Entity A," a producer and marketer of tobacco products located on the Six Nations Indian Reserve in Ohsweken, Ontario, Canada. (TSI ¶¶ 4-5.) Arthur Montour is the President and sole owner of NWS. (TSI ¶ 6.) Peter Montour is a shareholder of Entity A, and a sales representative of and consultant to NWS who received a share of NWS's business profits. (TSI ¶ 7.) Kenneth Hill is a shareholder and the chief marketing officer of Entity A, who also received a share of NWS's business profits. (TSI ¶ 8.)

NWS engaged with Turtle Island Enterprises, a wholesale supplier of cigarettes with a warehouse in Bosque Farms, New Mexico, that sold and distributed Seneca and Opal brand cigarettes. (TSI ¶ 9.) From the spring of 2003 until the spring of 2004, Blue Stilly faxed orders for Seneca and Opal brand cigarettes to Turtle Island in New Mexico. (TSI ¶ 18.) Turtle Island then relayed the orders to NWS employees in New York, who would then instruct its employees at a warehouse in a Foreign Trade Zone in Las Vegas, Nevada to "release and ship the cigarettes to Blue Stilly." (TSI ¶ 18.) Neither NWS, Turtle Island, Blue Stilly, nor anyone else pre-notified the Washington State Liquor Control Board, affixed applicable Washington State tax stamps or paid or pre-collected applicable Washington State taxes. (TSI ¶ 18.)

In the spring of 2004, Peter Montour and Arthur Montour terminated NWS's relationship with Turtle Island and took over the distributorship in New Mexico. (TSI ¶ 19.) From the spring of 2004 to February 2005, Blue Stilly placed orders with the NWS-run distributorship in New Mexico, which relayed the orders to NWS's New York office. (TSI ¶ 20.) NWS in New York

---

20, 2009. (Dkt. No. 41.) The grand jury returned the Third Superseding Indictment on March 17, 2010. (Dkt. No. 134.)

instructed the warehouse in the Foreign Trade Zone in Nevada to ship unstamped cigarettes to the Blue Stilly. (TSI ¶ 20.) Neither NWS, Blue Stilly, nor anyone else pre-notified the Washington State Liquor Control Board, affixed applicable Washington State tax stamps or paid or pre-collected applicable Washington State taxes. (TSI ¶ 20.)

In January 2005, NWS requested Mona Robley to take over the Bosque Farms, New Mexico distributorship. (TSI ¶ 21.) Mona Robley agreed, took over the Bosque Farms, New Mexico warehouse, and named her business "Isleta Native Wholesale Supply." (TSI ¶ 21.) From February 2005 through February 2008, Blue Stilly faxed orders to Isleta in New Mexico, which then relayed the orders to NWS in New York. (TSI ¶ 22.) NWS in New York then instructed the Nevada warehouse in the Foreign Trade Zone to ship unstamped cigarettes to the Blue Stilly. (TSI ¶ 22.) Neither NWS, Blue Stilly, Isleta nor anyone else pre-notified the Washington State Liquor Control Board, affixed applicable Washington State tax stamps or paid or pre-collected applicable Washington State taxes. (TSI ¶ 22.)

From March 2003 to February 2008, NWS shipped and sold approximately 422,590 cartons of contraband cigarettes to Blue Stilly. (TSI ¶ 24.) Neither Defendants, Blue Stilly, Isleta, nor Turtle Island paid Washington State taxes on the cigarettes and nor did they provide advance notification to the State prior to shipping the unstamped cigarettes. (TSI ¶ 25.) Defendants conspired to ship, transport, receive, possess, sell, distribute, and purchase contraband cigarettes in violation of the CCTA. (TSI ¶ 15.) The Indictment also sets forth fifteen individual charges against Defendants for trafficking contraband cigarettes. (TSI ¶¶ 28-57.) Defendants are charged with knowingly and unlawfully shipping, transporting, receiving, possessing, distributing, and purchasing contraband cigarettes, and aiding and abetting these violations. (TSI ¶¶ 28-57.)

B. Statutory Framework

The CCTA makes it "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. § 2342(a). The term "contraband cigarettes" means:

> a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in the possession of any person. . . .

18 U.S.C. § 2341(2). Put briefly, cigarettes in excess of 10,000 are contraband under the CCTA if state cigarette tax stamps are required but absent on the packaging. To this extent, the CCTA "requires as a predicate, the failure to comply with state tax laws" with regard to the stamping of cigarettes. United States v. Baker, 63 F.3d 1478, 1486 (9th Cir. 1995).

With limited exceptions, all cigarettes possessed or sold in Washington must bear a state tax stamp, "whether or not such tax has been paid or whether an exemption from the tax applies." RCW 82.24.030(1), -.020. The tax "stamps must be affixed on the smallest container or package that will be handled, sold, used, consumed, or distributed" in the state. RCW 82.24.030(1). Cigarettes "held, owned, or possessed by any person . . . that do not have the stamps affixed to the packages or containers" are contraband and subject to seizure and forfeiture. RCW 82.24.130(1)(a). Possession means both physical possession by the purchaser and constructive possession by the purchaser in the location of the purchaser "when cigarettes are being transported to or held for the purchaser or his or her designee. . . ." RCW 82.24.020(5).

There are two relevant exceptions to the rule that all cigarettes in the Washington State must be stamped. First, a person who "has given notice to the [liquor control] board in advance of the commencement of transportation [may] transport or cause to be transported" unstamped cigarettes into Washington without stamps being required. RCW 82.24.250(1). To qualify for this exception, the person transporting or causing the transport must also have invoices or

delivery tickets that show the name and address of the consignee or purchaser and the quantity and brands of the cigarettes being transported. RCW 82.24.250(2). Additionally, the consignee or purchaser of the cigarettes to whom the cigarettes are destined must also be of a class who can accept unstamped cigarettes. RCW 82.24.250(3), -.250(7). If all of these provisions are met, then the unstamped cigarettes do not necessarily need stamps (and are not necessarily contraband). However, if advance notice is not given, the invoices or delivery tickets are not present, the consignee or purchaser is falsified, or the person receiving the cigarettes is not authorized to receive unstamped cigarettes, the cigarettes lack required stamps and are contraband under the CCTA. 18 U.S.C. § 2341(2); RCW 82.24.250(4), -.030(1); WAC 458-20-186(506) ("No person may possess or transport cigarettes in this state unless the cigarettes have been properly stamped or that person has fully complied with" the rules as to transportation of unstamped cigarettes.").

The second exception applies to cigarettes that are merely passing through Washington State. The "[t]ransportation of cigarettes from a point outside this state to a point in some other state will not be considered a violation of this section provided that the person so transporting such cigarettes has in his possession adequate invoices or delivery tickets which give the true name and address of such out-of-state seller or consignor and such out-of-state purchaser or consignee." RCW 82.24.250(5). If a person fails to satisfy each element of this exception, the unstamped cigarettes are contraband under the CCTA because they lack required stamps. 18 U.S.C. § 2341(2); RCW 82.24.250(4), -.030(1); WAC 458-20-186(506).

## Analysis

A. <u>Standard</u>

Defendants appear to pursue their motions to dismiss pursuant to Federal Rule of Criminal Procedure 12, although none of the Defendants brief or address the standard. Under Rule 12(b), a defendant may file a pretrial motion raising "any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2). "Rule

12(b) of the Federal Rules of Criminal Procedure permits consideration of any defense which is capable of determination without the trial of the general issue." United States v. Nukida, 8 F.3d 665, 669 (9th Cir. 1993) (quotation omitted). A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact." Id. (quotation omitted).

A "defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996) (quotation omitted). "If the pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact, and must be deferred." Nukida, 8 F.3d at 669 (quotation omitted). If, however, the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense raised, the defense issue is properly resolved before trial. Id. In any event, "[a] motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence. . . ." Jensen, 93 F.3d at 669 (quotation omitted).

B. Motion to Dismiss Substantive CCTA Charges (Dkt. No. 92)

Defendants move to strike certain allegations in and/or dismiss ten substantive CCTA charges against them. (Dkt. No. 92.) Defendants make three arguments: (1) failure to provide advance notice does not render cigarettes contraband under the CCTA; (2) the cigarettes were not contraband because the alleged shipments of cigarettes satisfy the pass-through provision in RCW 82.24.250(5); and (3) United States v. Baker requires dismissal. (Id.) None of these arguments has merit and the Court DENIES the motion.

1. Failure to provide advance notice

Defendants argue that the failure to provide advance notice under RCW 82.24.250(1) does not render the cigarettes contraband under the CCTA. (Dkt. No. 92 at 6-7.) This theory is premised on an erroneous construction of the CCTA and state law.

Under the CCTA, contraband cigarettes are defined as those in a quantity in excess of 10,000 that are required to, but do not bear a state tax stamp. 18 U.S.C. § 2341(2). In Washington, all cigarettes are required to have tax stamps. RCW 82.24.030(1). There is a limited exemption to the rule requiring stamps on all cigarettes in Washington provided that advance notice is given prior to transporting the cigarettes and other requirements are met. RCW 82.24.250(1)-(3). Absent satisfaction of all the elements of this exception, unstamped cigarettes violate the state stamping requirement and are therefore contraband under the CCTA. RCW 82.24.250(4), -.130(1)(a) (cigarettes without stamps affixed are contraband and subject to seizure and forfeiture); 18 U.S.C. § 2341(2).

The indictment alleges that the cigarettes Defendants transported lacked state tax stamps and that no Defendant or other person provided advance notice to the Liquor Control Board prior to causing the transport of the cigarettes into Washington. (TSI ¶¶ 29-57.) These allegations show that the cigarettes were contraband under the CCTA because they should have had, but did not have state tax stamps and no exception applies. See United States v. Smiskin, 487 F.3d 1260, 1263 (9th Cir. 2007) (noting that the defendants' failure to provide notice to the State prior to transporting unstamped cigarettes meant that the unstamped cigarettes were contraband under the CCTA). The charges in Counts 7 through 16 of the Third Superseding Indictment are not defective.

Defendants argue that their failure to pre-notify means only that they violated state law, not the CCTA. This ignores the fact that the failure to pre-notify means the unstamped cigarettes transported were contraband under state law and the CCTA by virtue of their lack of required stamps. That there may be additional penalties under state law for failing to notify the state does not render prosecution under the CCTA erroneous. The Court DENIES Defendants' motion on this issue.

2. Pass-through provision

Defendants contend they did not transport contraband because the alleged shipments of cigarettes from Nevada to the Stillaguamish satisfied the "pass-through" exception in RCW 82.24.250(5). (Dkt. No. 92 at 7-9.) Defendants argue that the Stillaguamish trust land is part of a state separate from Washington and that the cigarettes therefore did not have to be stamped. This argument is without merit.

Under RCW 82.24.250(5), unstamped cigarettes transported from outside the state to a point outside the state are not necessarily subject to Washington's stamp requirements. The person transporting the cigarettes must have adequate invoices or delivery tickets showing the identity of the out-of-state seller or consignor. RCW 82.24.250(5). In Paul v. State, 110 Wn. App. 387, 388-89 (2002), the court recognized that Washington's cigarette stamp tax requirements were inapplicable to cigarettes shipped from Canada to Montana, even though they were transferred in a Foreign Trade Zone in Bellingham. The petitioner in Paul successfully argued that unstamped cigarettes were not contraband because they were merely passing through the state.

The pass-through provision does not apply to the alleged transactions in the Third Superseding Indictment because the Stillaguamish trust land is not a separate "state" for purposes of RCW 82.24.250(5). Generally, an "Indian reservation is considered part of the territory of the State." Nevada v. Hicks, 533 U.S. 353, 361-62 (2001) (citation omitted). This is so even though tribes generally enjoy sovereign immunity. That Indians have a "right to make their own laws and be governed by them does not exclude all state regulatory authority on the reservation." Id. at 361. The Supreme Court's decision that Washington's cigarette taxes apply to on-reservation sales to nonmembers and non-Indians further reinforces this Court's conclusion that Stillaguamish lands at issue are within the "state" with regard to RCW 82.24.250(5). Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134 (1980). If these lands were part of a separate state, Washington could not have jurisdiction over the sales occurring there. Thus, while the Stillaguamish may possess inherent authority over their

territory, they are not a separate "state" with regard to RCW 82.24.250(5). The same is not true in Montana or in Canada, which are "states" where Washington has no authority. See Paul, 110 Wn. App. at 388-89.

Another provision in RCW 82.24.250 reinforces the notion that the pass-through provision does not apply to the Stillaguamish land[3] in question. RCW 82.24.250(9) expressly states that nothing in RCW 82.24.250 limits the Yakama Nation's right to travel. This provision would be superfluous if the term "state" in RCW 82.24.250(5) included Indian lands, as Defendants argue. See Boise Cascade Corp. v. U.S. EPA, 942 F.2d 1427, 1432 (9th Cir. 1991) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous."). Similarly, had the legislature intended Indian lands to be treated as separate "states" for the purpose of RCW 82.24.250(5), it could have said so expressly, as it did with regard to the Yakama Nation in RCW 82.24.250(9).

Defendants' reliance on Paul is misplaced. Defendants argue that the Foreign Trade zone in Paul was not considered part of Washington, much like an Indian reservation or trust land. (Dkt. No. 92 at 9.) This is an incorrect reading of Paul. Nowhere in Paul does the court conclude that a Foreign Trade Zone is or is not part of the state. Rather, the court concluded that the pit-stop in the Foreign Trade Zone did not change the cigarettes' point of origination from Canada to Washington. Paul, 110 Wn. App. at 392. Thus, Paul provides no support for the theory that tribal lands are outside of the state.

Defendants have also provided no clear legal authority for the proposition that the Stillaguamish land is technically a different "state" than Washington. (Dkt. No. 92 at 8-9.) The cases they rely on involve the question of tribal sovereign immunity, not the question of whether

[3] For purposes of deciding this issue, the Court does not distinguish between Indian reservations and Indian trust land. The issue is not briefed by the parties and is not important to decide the motion.

tribal lands are separate "states," particularly in relation to RCW 82.24.250(5). See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509-11 (1991) (holding that a tribe enjoyed sovereign immunity from a suit by Oklahoma to collect cigarettes taxes the state claimed it was owed from the tribe's sale of cigarettes to tribal members on tribal land[4]); Blatchford v. Native Village of Noatak and Circle Village, 501 U.S. 775, 782 (1991) (considering tribal sovereign immunity); Krystal Energy Co. v. Navajo Nation, 357 F.3d 1055, 1057-58 (9th Cir. 2004) (considering a tribe's sovereign immunity); Winnebago Tribe v. Morrison, 512 F. Supp. 2d 1182, 1885-86 (D. Kan. 2007) (considering irrelevant and distinct issues of Kansas law). As explained above, tribal sovereign immunity does not impact the question of whether tribal lands constitute separate states for purposes of RCW 82.24.250(5). See Hicks, 533 U.S. at 361-62. Similarly, the court in In re Marriage of Susan C., 114 Wn. App. 766, 774 (2002) decided a discrete issue of jurisdiction under the Parental Kidnapping Prevention Act, which is irrelevant to the issue presented here.

The Court DENIES Defendants' motion on this issue. The Stillaguamish trust land to which the cigarettes were allegedly shipped is part of the state and the pass-through provision is inapplicable.

3. Baker

Defendants argue that United States v. Baker requires dismissal of the substantive CCTA counts 7 through 16. (Dkt. No. 92 at 11.) Defendants rely on footnote in Baker in which the court discussed the dismissal of two defendants who could not be prosecuted under the CCTA because they "trafficked in the cigarettes only in Montana, where the cigarettes were not contraband." 63 F.3d at 1488 n.12. This portion of Baker is irrelevant to the present charges because Defendants allegedly transported cigarettes into Washington in violation of Washington

[4] Notably, the Court held that the tribe had to impose and collect state cigarette taxes for sales of cigarettes occurring on-reservation to nonmembers. Id. at 512-13.

law and the CCTA. Defendants are not similarly situated to the two mentioned in the Baker footnote. The Court DENIES the motion. (Dkt. No. 92.)

C. Void for Vagueness Motion to Dismiss (Dkt. No. 91)

Defendants move to dismiss the CCTA charges on the theory that the law violates the void for vagueness doctrine. (Dkt. No. 91.) Defendants have not shown the law to be impermissibly vague.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357 (1983). The legislature must provide minimal guidelines to avoid "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." Id. at 358 (quotation omitted). As Defendants urge, the Court is to assess the challenge in light of the circumstances of the case, not as facial challenge. Rojas-Garcia v. Ashcroft, 339 F.3d 814, 822 (9th Cir. 2004) (considering void-for-vagueness in the First Amendment context).

The Ninth Circuit has held that "[t]he interaction between the CCTA and Washington's tax scheme . . . does not involve a complex regulatory scheme with the potential of trapping unwary merchants trading in cigarettes." Baker, 63 F.3d at 1492. "The law is quite simple." Id. While the court in Baker did not consider a void for vagueness challenge, it did consider a state preapproval requirement similar to the pre-notification law here. Baker's holding is thus on point, including its statement that "knowledge of cigarette taxing requirements can be presumed among those who deal in cigarettes in quantities exceeding 60,000." Id. This Court recently cited this portion of Baker in holding that a tax compact between the Swinomish and the State did not render prosecution under the CCTA unconstitutionally vague. United States v. Wilbur, CR09-191 MJP, Dkt. No. 123 at 11-12 (W.D. Wash. Feb. 4, 2010).

The Court here finds no impermissible ambiguity or vagueness in the CCTA and state cigarette laws as applied in this case. See Rojas-Garcia, 339 F.3d at 822. The interaction between the CCTA and state law does not appear to have lead to a "standardless sweep" by law enforcement of innocent cigarette merchants. The state law requiring stamps is straightforward: all cigarettes in the state must have stamps. RCW 82.24.030(1). The exceptions to this rule are clear, narrow, and inapplicable to the allegations in the indictment. Here, the transportation laws are less convoluted than the cigarette tax scheme at issue in Wilbur, which the Court found not to be unconstitutionally vague. Wilbur, CR09-191 MJP, Dkt. No. 123 at 11-12. There is no ambiguity which might require the Court to employ the deferential standard for interpreting ambiguous statutes in favor of Indians. WAC 458-20-192(1)(a)(ii). Although the Court DENIES Defendants' motion, it addresses the various arguments Defendants raise.

Defendants argue that it is not possible to know whether cigarettes are contraband under the CCTA because Washington's definition of contraband and the CCTA's definition are in conflict. (Dkt. No. 91 at 4-5.) The Court finds no such conflict. The only operative term "contraband" exists in the CCTA. State law applies only insofar as determining whether the cigarettes are required to have stamps. Here, all cigarettes in Washington must bear tax stamps, but for one relevant exception.[5] RCW 82.24.030(1), -.130(1)(a). If the advance notice requirements in RCW 82.24.250(1)-(3) are satisfied, the unstamped cigarettes are not necessarily subject to the stamp requirement and contraband under the CCTA. 18 U.S.C. § 2341(2). Failure to satisfy RCW 82.24.250(1)-(3), however, means (1) the cigarettes remain subject to the ever-present stamp requirement and (2) the unstamped cigarettes are contraband under the CCTA. No ambiguity exists that might render the prosecution impermissible.

Defendants contend that the use of the term "transporting" in the state regulations makes the criminal scheme void for vagueness. (Dkt. No. 91 at 5-6.) Defendants argue that the state

[5] As explained above, the pass-through exception in RCW 82.24.250(5) is inapplicable and the Court does not discuss it here.

tax stamp requirement hinges on whether the person transported cigarettes and that the state regulations use this term inconsistently. This proposition is flawed. The tax stamp requirement is always present unless a person transporting or causing the transport of unstamped complies with the advance notification rules in RCW 82.24.250(1)-(3). The advance notice is an exception to the stamp requirement, not a triggering event.

Defendants argue that there is confusion over the class of individuals to which the advance notice provisions in RCW 82.24.250(1) applies. (Dkt. No. 91 at 6-7.) Quite plainly, the advance notice provision applies to "a person" who either "transport[s] or cause[s] to be transported in this state cigarettes not having the stamps affixed to the packages or containers." Defendants contend that this broad definition permits the government to "run[] with the long rope," insinuating that liability under the CCTA is somehow enlarged as a result. (Dkt. No. 91 at 7.) The Court does not find the scope of the advance notice to be vague or ambiguous. The Court notes, too, that Defendants are alleged to have transported cigarettes into Washington and they clearly fall within the class of individuals who should have and could have provide notice under RCW 82.24.250(1). (TSI ¶¶ 29-57); see infra.

Defendants also contend there is a conflict between state law and regulations as to who must give notice. (Dkt. No. 91 at 7-8.) State law requires any person who "transport[s] or cause[s] to be transported" unstamped cigarettes to provide advance notice. RCW 82.24.250(1). State regulations provide that "no person other than a licensed wholesaler may transport unstamped cigarettes in this state except as specifically set forth in RCW 82.24.250." WAC 458-20-186(501). The Court finds no conflict with or confusion in this regulation and state law. While the regulation does not use the term "cause to transport," it refers expressly to RCW 82.24.250, which contains that parameter. This sufficiently avoids any ambiguity, which does not affect in any way the class of persons who could be liable under the CCTA.

Defendants also argue that the because the advance notice provision in 82.24.250(1) does not state when precisely advance notice is to be given, the entire scheme is void. (Dkt. No. 91 at

8-9.) The law clearly requires notice "in advance of the commencement of transportation." There is no ambiguity and Defendants' argument is off-point. The Court DENIES Defendants' motion in its entirety. (Dkt. No. 91.)

D. Motions to Dismiss as to the Class of Individuals Liable under the CCTA (Dkt. No. 97)

Defendants Hill and Peter Montour argue that they are not liable under the CCTA because they were not of a class of persons required to give notice under Washington law prior to shipping unstamped cigarettes into the State. (Dkt. No. 97.) This argument misreads the state law and the CCTA.

As explained above, the advance notice exception expressly applies to any "person" who "transports or causes the transport of" unstamped cigarettes. RCW 82.24.250(1). Defendants Hill and Peter Montour are persons who are alleged to have transported or caused the transport of unstamped cigarettes in Washington. (TSI ¶¶ 29-57.) A plain reading of the state law indicates that they could have provided advance notice to ensure that the cigarettes were not required to be stamped. For that matter, any person other than the four defendants, who in any way caused the transport of the cigarettes could have provided advance notice. As alleged, however, no Defendant or third-party provided advance notice and the cigarettes were thus subject to the ever-present requirement that they be stamped. RCW 82.24.030(1). What is important is that notification be given, not "who" gives it. The indictment sufficiently alleges that Defendants Hill and Peter Montour violated the CCTA by transporting unstamped/contraband cigarettes and aiding and abetting in their transport. (TSI ¶¶ 29-57.)

Defendants' reliance on United State v. Shear, 962 F.2d 488 (5th Cir. 1992) is misplaced. (Dkt. No. 97 at 3.) In Shear, the court found that a person could not be liable for violating OSHA where the responsibility for compliance with the law was allocated to various and specific individuals with particular roles. Id. at 494. Defendants argue that Washington's stamp requirements are just as detailed as the OSHA rules and they allocate responsibility to specific persons. Defendants' argument is overreaching. RCW 82.24.250(1) broadly allocates the

requirement of advance notice to any "person" who transports or causes the transport of unstamped cigarettes. There is no complex delegation of authority to different classes of persons as under OSHA. Moreover, the person who fails to provide advance notice under state law need not be the same as the person charged with violating federal law. For example, a person could violate the CCTA by possessing unstamped cigarettes if they were not a person who could possess them under state law, even if another person obtained advance notification prior to transport. See, e.g., RCW 82.24.250(4). Here, Defendants Hill and Peter Montour are liable for transporting and aiding and abetting in the transport of contraband (unstamped) cigarettes, as criminalized by 18 U.S.C. § 2342(a), for which no advance notice was provided. The Court DENIES this motion. (Dkt. No. 97.)

E. Motion to Dismiss Aiding and Abetting Charges (Dkt. No. 96)

Defendants Hill and Peter Montour argue that they cannot be liable for aiding and abetting under the CCTA because Washington's pre-notification requirement has no scienter element. (Dkt. No. 96.) Defendants confuse the basis for criminal liability, interposing state law with the federal law of the CCTA.

As the Ninth Circuit has held, the mens rea for violating the CCTA is knowledge of the act, not knowledge that the act is criminal. Baker, 63 F.3d at 1491. Liability for aiding and abetting requires only that the person have the same mens rea as the person committing the substantive violation. United States v. Garcia, 400 F.3d 816, 819 (9th Cir. 2005). Similarly, a person may be liable for conspiracy simply by having knowledge of the act, not knowledge that the act is illegal under the CCTA. Baker, 63 F.3d at 1493.

Defendants are charged with aiding and abetting and conspiracy to violate the CCTA. They are not being charged with aiding and abetting a failure to comply with Washington's advance notification requirements. One of the illegal acts charged here is the transport of unstamped cigarettes into Washington in violation of the state laws and the CCTA. The government has sufficiently alleged facts indicating the Defendants' liability as aiders and

abettors to these violations of the CCTA, which requires proof only of knowledge. The Court DENIES this motion. (Dkt. No. 96.)

F. Motion to Compel Production of Grand Jury Instructions (Dkt. No. 93)

Defendants seek to compel the disclosure of the prosecutor's instructions to the grand jury, which Defendants admitted in oral argument was a "big ask." (Dkt. No. 93.) Defendants argue that because this is the first time the government has sought to prosecute out-of-state importers and suppliers of cigarettes for violating the CCTA, they should be entitled to know how the prosecutors instructed the grand jury. The Court DENIES the request.

The Court may authorize the disclosure of a grand-jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). A party seeking disclosure of grand jury material under Rule 6(e) must demonstrate a particularized need that outweighs the public interest in grand jury secrecy. See United States v. Perez, 67 F.3d 1371, 1381 (9th Cir. 1995). Defendants, therefore, must establish that: (1) the material sought will avoid a possible injustice; (2) the need for disclosure outweighs the need for continued secrecy; and (3) the request is structured narrowly to cover only the material needed. See Douglas Oil Co. v. Petrol Stops NW, 441 U.S. 211, 222 (1979). While the Court has discretion to disclose grand jury transcript, the Court is also instructed not to "reveal the substance or essence of the grand jury's investigation or deliberations." United States v. Diaz, 236 F.R.D. 470, 476 (N.D. Cal. 2006); United States v. Plummer, 941 F.2d 799, 806 (9th Cir. 1991).

Defendants argue that it is impossible to know how the government instructed the grand jury as to the CCTA charges because there is ambiguity with regard to the advance notice requirements. As discussed above, the law at issue here is not particularly complex. See also Baker, 63 F.3d at 1492. As the government correctly notes, it need not have even outlined the elements of the offense to the grand jury, "so long as all the elements are at least implied." United States v. Larrazolo, 869 F.2d 1354, 1359 (9th Cir. 1989), overruled on other grounds,

Midland Asphalt Corp. v. United States, 489 U.S. 794 (1989). The government is also correct that Defendants have failed to provide a particularized need for the grand jury instructions. Defendants are seeking the instructions simply because they believe the law to be unclear and the prosecution of this class of defendants to be novel. Defendants have not satisfied their burden to show a particularized need for the instructions or that revelation would prevent any possible injustice. See Douglas Oil, 441 U.S. at 222. Defendants have also not shown that the presumption of regularity in the grand jury's proceedings should not attach. See United States v. Morales, Cr. No. S-05-0443 WBS, 2007 WL 628678, at *3-4 (E.D. Cal. Feb. 28, 2007).

The cases relied on by Defendants are of no support for their position. Defendants cite United States v. Alter, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973), for the proposition that a defendant is entitled to know the content of the court's charges to the grand jury. As Defendants admit, this is dicta. (Dkt. No. 93 at 4.) Moreover, the court only considered a request from a defendant for the court's instructions and charges to the grand jury, not the prosecutor's instructions to the grand jury—the request here. Similarly, in United States v. Fuentes, No. CR.S-07-0248 WBS, 2008 WL 2557949, at *4 (E.D. Cal. June 24, 2008), the court granted defendants access to "the transcript of the instruction and charges to the grand jury" from the court, not the prosecutor. In United States v. Talao, No. CR-97-0217-VRW, 1998 WL 1114043, at *12 (N.D. Cal. Aug. 14, 1998), the Court relied on the dicta in Alter and ordered production of instructions to the grand jury by the prosecutor. This may support the Defendants' position, but it does not bind or persuade this Court. The Court DENIES the motion.

**Conclusion**

Defendants present a broad range of attacks on the allegations against them. Defendants have not shown any legal defect in the Indictment. The CCTA charges are sufficiently pleaded and are not unconstitutionally void for vagueness. The charges against Kenneth Hill and Peter Montour suffer no legal defects. The Court cannot dismiss the Third Superseding Indictment. Defendants have also failed to provide adequate reasons to compel the disclosure of the

prosecutors' instructions to the grand jury. The Court DENIES all five motions addressed in this Order.

The Clerk shall transmit a copy of this Order to all counsel of record.

Dated this 6th day of April, 2010.

Marsha J. Pechman
United States District Judge